UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

FRANKLIN CLAYTON,

        Plaintiff,                     Case No. 1:16-cv-830

v.                                           Honorable Janet T. Neff

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.

_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

The Court screened Plaintiff's initial complaint and, in lieu of dismissing it, provided Plaintiff leave to amend his complaint to address the deficiencies. Plaintiff then proceeded to file several amended complaints. By order entered December 2, 2016 (ECF No. 21), the Court granted Plaintiff leave to file his various complaints. The most recent complaint (ECF No. 20) is now before

the Court for review under the PLRA standards. Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Contractors, Napel, Meden, Pascoe, Vette, Brown-Brandon, Russell and Schuette. The Court will serve the complaint against Defendants Michigan Department of Corrections, Pandya, Washington, McKee, and Borgerding.

## Factual Allegations

Plaintiff is incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Michigan. Plaintiff is serving a sentence of 4 to 15 years' imprisonment following his conviction for engaging in sexual penetration with another person, when Plaintiff knew he was infected with the human immunodeficiency virus (HIV), without first informing the other person that Plaintiff was HIV infected, in violation of MICH. COMP. LAWS § 333.5210.

During his incarceration, Plaintiff has twice received major misconduct tickets for sexual misconduct: engaging in sexual penetration activity with another inmate. The Michigan Corrections Code provides:

> If a prisoner receives a positive test result [for HIV or an antibody to HIV] and is subsequently subject to discipline by the department for sexual misconduct that could transmit HIV . . . the department shall house that prisoner in administrative segregation, an inpatient health care unit, or a unit separate from the general prisoner population, as determined by the department.

MICH. COMP. LAWS § 791.267(3). The MDOC has adopted a policy directive that further provides:

> OO. If the prisoner who received the misconduct is HIV positive, the Health Unit Manager shall timely report the incident to the Regional Medical Officer. The Regional Medical Officer shall review the actual misconduct report(s) and other pertinent information to determine if the prisoner's behavior could transmit HIV. It will be presumed to be behavior which could transmit HIV if the behavior involved actual or attempted sexual penetration or the intravenous use of a needle or syringe. The date of the misconduct and the determination of whether or not HIV could have been transmitted shall be documented in the prisoner's health record.

> PP. If it is determined that the behavior could transmit HIV and the prisoner received post-test counseling required pursuant to Paragraph LL prior to engaging in the behavior, the CFA Deputy Director and the Chief Medical Officer shall be informed in writing of the incident and shall review the case to determine if the prisoner should be classified to administrative segregation. If the prisoner is classified to administrative segregation, s/he shall not subsequently be reclassified without prior authorization by the CFA Deputy Director after consultation with the Chief Medical Officer. Such prisoners may be placed in health care inpatient units if necessary to receive medical care, including mental health care.

MDOC Policy Directive 03.04.120 (eff. June 25, 2012).

Plaintiff was placed in the restrictive confines of administrative segregation at MBP following his first sexual misconduct violation. He was eventually released. Within a few months, he committed his second sexual misconduct violation. At that time, March of 2015, he was placed in administrative segregation where he remains to this day. Although the officials at MBP have recommended his release to general population, on June 30, 2016, the CFA Deputy Director and the Chief Medical Officer refused the release because of Plaintiff's number of misconducts. (Request for Approval to Reclassify, Form CSJ-283b, ECF No. 13-2, PageID.447.) Plaintiff states that he has since been told he will likely remain in administrative segregation until his maximum discharge date, currently estimated as September 15, 2018.

Plaintiff contends that the MDOC policy and his extended stay in administrative segregation have cost him dearly. He no longer receives visitors; is confined to his cell virtually all the time; is restrained in handcuffs, leg shackles, and belly chains; is limited to five one-hour exercise periods in a 6 foot by 9 foot cage each week; cannot send email or uncensored mail; is permitted only three brief showers per week; must eat in his cell; may not work; and is denied direct access to the law library, the general library, group recreation, therapeutic activities, outpatient

mental health programs, and educational or religious programming. Plaintiff alleges that all of these deprivations have exacted a substantial emotional, psychological and physical toll.

Critically, Plaintiff contends he has endured these hardships for no reason. He claims there is no risk of transmission of HIV from his sexual activity.

Plaintiff sues the MDOC; unnamed "Contractors;" MDOC Regional Medical Officer Dr. Haresh Pandya; MDOC Director Heidi Washington; MDOC Deputy Director Kenneth McKee; Corizon Medical Group Chief Medical Officer Dr. William Borgerding; Community Health Chief of Psychiatry Dr. David Dowdy; MBP Warden Robert Napel; MBP Physician Dr. Terry Meden; MBP Medical Assistant Fred Pascoe; MDOC Mental Health Rights Specialist William Vette; MDOC Administrative Assistant CC Brown-Brandon; MDOC Grievance Coordinator Richard Russell; and Michigan Attorney General Bill Schuette. With the exception of the Michigan Attorney General, the individual Defendants are all sued in their individual and official capacities. Defendant Schuette is sued only in his official capacity.

Plaintiff sues Defendant Pandya because he was the Regional Medical Officer who made the initial determination that Plaintiff's conduct could transmit HIV. (Fifth Am. Compl., ECF No. 20, PageID.843 ¶ 10) Plaintiff sues Defendants Borgerding and McKee because they signed off on the initial determination that classified him to administrative segregation under the policy and served as the CFA Deputy Director and Chief Medical Officer who, under the policy, refused to release him from administrative segregation in May of 2016 when MBP personnel had signed off on the release. (*Id.*, PageID.844, 846-847, ¶¶ 11, 12, 24; Segregation Behavior Review, ECF No. 13-2, PageID.452; Request for Deputy Director Approval, ECF No. 13-2, PageID.447.) Plaintiff sues Defendant Washington because she is responsible for the administration of the MDOC and the

actions of her subordinates. (Fifth Am. Compl., ECF No. 20, PageID.844 ¶ 13.) Plaintiff sues Defendant Schuette because he is broadly responsible for the enforcement of state laws and policies. (*Id.*, ¶ 14.) Plaintiff sues the remaining Defendants because they, or those subject to their supervision, performed, participated in, or aided or abetted the acts alleged in the complaint or proximately caused the harm alleged in the complaint. (*Id.*, PageID.844-845 ¶15.)

Plaintiff sues all of the Defendants for violating his rights under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA). He sues Defendants Pandya, Borgerding, McKee, Washington, and Schuette under 42 U.S.C. § 1983 for violating Plaintiff's rights under the Fourteenth Amendment.[1]

Plaintiff asks the Court to transfer him to a facility that can meet his mental health needs; to declare the provisions and enforcement of MDOC Policy Directive 03.04.120 (NN) - (QQ) and MICH. COMP. LAWS § 791.267(3) violate Plaintiff's rights under the ADA, the RA, and the Fourteenth Amendment; to enjoin enforcement of the policy directive and the statute; to award Plaintiff actual and punitive damages; to award Plaintiff his costs, expenses and attorney fees; and to restore 1064 days of disciplinary credits and order Plaintiff's immediate release.

---

[1] Plaintiff makes passing reference to the First, Fifth, Sixth, and Eighth Amendments when stating that the Defendants deprived Plaintiff of his due process rights. Simple recitation of an amendment number is insufficient to state a claim for violation of that amendment. Accordingly, the Court will consider Plaintiff's §1983 claim only with respect to Plaintiff's allegation that the Defendants' conduct violates the Fourteenth Amendment Due Process Clause. That is consistent with the title and statement of his claim. (Fifth Am. Compl., ECF No. 20, PageID.856-857 ¶¶ 67-72.)

**Discussion**

I.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–that the pleader is entitled to relief." *Id*. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v.*

*Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  No allegations

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991).

Plaintiff fails to even mention Defendants "Contractors," Napel, Meden, Pascoe, Vette, Brown-Brandon, or Russell in the body of his complaint. With respect to Defendant Schuette, Plaintiff alleges only that Defendant Schuette has broad responsibility for the enforcement of state laws and a duty to defend state policies and laws. Plaintiff does not allege, however, that Defendant Schuette enforced or defended the policy or statute at issue here. Plaintiff does not allege that Defendant Schuette has any authority with respect to the policy at issue here.

Plaintiff makes no factual allegations that show Defendants Contractors, Napel, Meden, Pascoe, Vette, Brown-Brandon, Russell, or Schuette denied Plaintiff any benefits because of Plaintiff's disability. Plaintiff does not allege any facts that demonstrate that Defendants Contractors, Napel, Meden, Pascoe, Vette, Brown-Brandon, Russell, or Schuette engaged in any active unconstitutional behavior. His allegations fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Accordingly, Plaintiff's claims against these Defendants will be dismissed.

B.  <u>Claims for personal liability of Defendants under the ADA or RA</u>

Defendants Pandya, Washington, McKee, and Borgerding are not proper defendants under the ADA and RA for claims against them in their individual capacities. Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The RA similarly provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . " 29 U.S.C.

§ 794. Because individuals such as Pandya, Washington, McKee, and Borgerding are not public entities providing programs or activities to which either the ADA or RA apply, they cannot be liable in their personal capacities under either Act. *See Reickenbacker v. Foster*, 274 F.3d 974, 975 n.9 (5th Cir. 2001) (noting that plaintiffs withdrew their individual claims in the face of a statutory argument); *Key v. Grayson*, 163 F. Supp.2d 697, 715 (E.D. Mich. 2001) (following great weight of authority holding that individuals cannot be liable under Title II of the ADA); *Calloway v. Boro of Glassboro Dept. of Police*, 89 F. Supp.2d 543, 557 (D. N.J. 2000) (collecting decisions of the Eighth Circuit and various district courts holding that individuals cannot be liable under the ADA or RA).

The ADA provides: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Here, Plaintiff claims the Defendants have discriminated against him based on the disability of being seropositive for HIV. The ADA's protection is not without exception. The ADA permits an entity to exclude an individual "where such individual poses a direct threat to the health or safety of others." 42 U.S.C. § 12182(b)(3).[2]

There is little doubt that a prisoner who tests positive for HIV and engages in penetrative sexual behavior poses a direct threat to the health and safety of others. The United States District Court for the Eastern District of Michigan reached that conclusion when MDOC prisoners challenged the same policy and statute fifteen years ago. *See Gibbs v. Martin*, No. 01-74480, 2003 WL 21909780 (E.D. Mich. July 28, 2003); *see also Onishea v. Hopper*, 171 F.3d 1289 (11th Cir. 1999) (holding that the Alabama prison system's segregation of all HIV positive inmates

---

[2]The RA includes a similar exception. 42 U.S.C. § 12113(b).

was not a violation of the Rehabilitation Act because those prisoners posed a direct threat to other inmates); *Estate of Mauro ex rel. Mauro v. Borgess Med. Ctr.*, 137 F.3d 405 (6th Cir. 1998) (affirming summary judgment that HIV-positive surgical technician was a direct threat even where odds of HIV transmission during a surgery fell between 1 in 42,000 and 1 in 420,000). But Plaintiff specifically alleges that he is not a threat to the health or safety of others because he is functionally cured. Based on his allegations, he has stated a claim that he is entitled to the protections of the ADA (and the RA). Plaintiff's claim that he is functionally cured is suspect. Morever, the materials Plaintiff has submitted in support of his complaint, and common sense, suggest that even if Plaintiff were functionally cured, there might still be a risk of transmitting the virus by sexual contact. As was the case in *Gibbs*, *Onishea*, and *Mauro*, however, that issue remains for determination on summary judgment or trial.

    II.  <u>Sovereign immunity</u>

Although Plaintiff sufficiently states at least one claim against each of the remaining Defendants, certain claims are barred by sovereign immunity.

    A.  <u>§ 1983 claims</u>

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of

Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)).

Plaintiff has also sued Defendants Washington, Pandya, McKee, and Borgerding in each Defendant's official capacity. A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the Michigan Department of Corrections. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). An official-capacity defendant is absolutely immune from monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592-93 (6th Cir. 1989). Therefore, Plaintiff's official capacity claims for damages under § 1983 against Defendants Washington, Pandya, McKee, and Borgerding are also properly dismissed on grounds of immunity. Nevertheless, an official-capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908) (Eleventh Amendment immunity does not bar injunctive relief against a state official). Plaintiff's official capacity claims for prospective injunctive relief under § 1983 against Defendants Washington, Pandya, McKee, and Borgerding may proceed.

B.   ADA and RA claims

The State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA. The ADA "validly abrogates state sovereign immunity" for "conduct that actually violates the Fourteenth Amendment [.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006); *see also Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010). If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims. Thus, Plaintiff properly brings his ADA claims against the MDOC and Defendants Washington, Pandya, McKee, and Borgerding in their official capacities.

The requirements for stating a claim under the RA are substantially similar to those under the ADA, except that the RA specifically applies to programs or activities receiving federal financial assistance. By accepting these funds, states waive sovereign immunity from claims under the RA. *Nihiser v. Ohio EPA*, 269 F.3d 626, 628 (6th Cir. 2001). For purposes of this opinion, the Court will assume that the MDOC receives federal assistance for the prison programs and activities at issue. As a consequence, the MDOC and its agents acting in their official capacities are not immune from suit under the ADA and RA.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Contractors, Napel, Meden, Pascoe, Vette, Brown-Brandon, Russell and Schuette will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and

1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendants Michigan Department of Corrections, Pandya, Washington, McKee, and Borgerding.

An Order consistent with this Opinion will be entered.


Dated:  December 9, 2016             /s/ Janet T. Neff
                                     Janet T. Neff
                                     United States District Judge