UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANKLIN CLAYTON #250554,

    Plaintiff,                                      Hon. Janet T. Neff

v.                                                    Case No. 1:16-CV-830

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Plaintiff's Motion for Summary Judgment</u>, (ECF No. 52), and <u>Defendants' Motion for Summary Judgment</u>, (ECF No. 55). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Plaintiff's motion be **denied**, Defendants' motion be **denied as moot in part and granted in part**, and this action **terminated**.

## BACKGROUND

Plaintiff is incarcerated with the Michigan Department of Corrections (MDOC), serving a sentence of 4 to 15 years' imprisonment following his conviction for engaging in sexual penetration with another person, when Plaintiff knew he was infected with the human immunodeficiency virus (HIV), without first informing the other person that Plaintiff was HIV infected, in violation of Mich. Comp. Laws § 333.5210.

˘1˘

During his incarceration, Plaintiff has been convicted of major misconduct violations for engaging in sexual penetration activity with another inmate. Michigan law provides that "If a prisoner receives a positive test result [for HIV or an antibody to HIV] and is subsequently subject to discipline by the department for sexual misconduct that could transmit HIV . . . the department shall house that prisoner in administrative segregation, an inpatient health care unit, or a unit separate from the general prisoner population, as determined by the department. Mich. Comp. Laws § 791.267(3). The MDOC has adopted a policy directive that further provides:

> OO. If the prisoner who received the misconduct is HIV positive, the Health Unit Manager shall timely report the incident to the Regional Medical Officer. The Regional Medical Officer shall review the actual misconduct report(s) and other pertinent information to determine if the prisoner's behavior could transmit HIV. It will be presumed to be behavior which could transmit HIV if the behavior involved actual or attempted sexual penetration or the intravenous use of a needle or syringe. The date of the misconduct and the determination of whether or not HIV could have been transmitted shall be documented in the prisoner's health record.
>
> PP. If it is determined that the behavior could transmit HIV and the prisoner received post-test counseling required pursuant to Paragraph LL prior to engaging in the behavior, the CFA Deputy Director and the Chief Medical Officer shall be informed in writing of the incident and shall review the case to determine if the prisoner should be classified to administrative segregation. If the prisoner is classified to administrative segregation, s/he shall not subsequently be reclassified without prior authorization by the CFA Deputy Director after consultation with the Chief Medical Officer. Such prisoners may be placed in health care inpatient units if necessary to receive medical care, including mental health care.

MDOC Policy Directive 03.04.120 (eff. June 25, 2012).

Plaintiff was placed in administrative segregation following his first sexual misconduct conviction. Within a few months of his release from segregation, Plaintiff was again convicted of engaging in sexual misconduct. Plaintiff was again placed in administrative segregation where he

˜2˜

apparently remains.  Although prison officials have subsequently recommended that Plaintiff be released to general population, the CFA Deputy Director and the Chief Medical Officer have refused such requests in light of Plaintiff's history of misconduct.  Plaintiff has allegedly been told he will remain in administrative segregation until his maximum discharge date.

Plaintiff alleges that as a result of being confined in administrative segregation, he no longer receives visitors and is confined to his cell in restraints, save for five one-hour exercise periods weekly.  Plaintiff alleges that he cannot send email or uncensored mail, is permitted only three brief showers per week, must eat in his cell, is not permitted to work, is denied direct access to the law library, and not permitted to participate in various other programs and activities.  Plaintiff argues that he has endured these hardships for no reason because there is no risk that he will transmit HIV to his sexual partners.

Plaintiff has sued the MDOC; unnamed "Contractors;" MDOC Regional Medical Officer Dr. Haresh Pandya; MDOC Director Heidi Washington; MDOC Deputy Director Kenneth McKee;   Corizon Medical Group Chief Medical Officer Dr. William Borgerding; Community Health Chief of Psychiatry Dr. David Dowdy; MBP Warden Robert Napel; MBP Physician Dr. Terry Meden; MBP Medical Assistant Fred Pascoe; MDOC Mental Health Rights Specialist William Vette; MDOC Administrative Assistant CC Brown-Brandon; MDOC Grievance Coordinator Richard Russell; and Michigan Attorney General Bill Schuette.   With the exception of the Michigan Attorney General, the individual Defendants are all sued in their individual and official capacities.  Defendant Schuette is sued only in his official capacity.

Plaintiff alleges that Defendants have violated his rights under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA).  Plaintiff further alleges that Defendants

Pandya, Borgerding, McKee, Washington, and Schuette have violated his Fourteenth Amendment right to due process. On December 9, 2016, the Honorable Janet T. Neff issued an Opinion and Order dismissing most of Plaintiff's claims. (ECF No. 22-23). At this juncture, the only claims remaining are: (1) ADA and RA claims against Defendants MDOC, Pandya, Washington, McKee, and Borgerding, and (2) Fourteenth Amendment due process claims against Defendants Pandya, Washington, McKee, and Borgerding. The remaining defendants now move for summary judgment. Plaintiff likewise moves for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v.*

*Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial."  *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof."  *Id.* at 353-54.  In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle."  *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).  Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Arnett*, 281 F.3d at 561.  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of

different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.        Eleventh Amendment Immunity**

Defendants Pandya, Washington, McKee, and Borgerding assert that with respect to Plaintiff's due process claims asserted against them in their official capacity, they are entitled to Eleventh Amendment immunity. The Court addressed this matter in its December 9, 2016 screening opinion. (ECF No. 22). Specifically, the Court, observing that "[a]n official capacity defendant is absolutely immune from monetary damages," concluded that "Plaintiff's official capacity claims for damages under § 1983 against Defendants Washington, Pandya, McKee, and Borgerding are properly dismissed on grounds of immunity." (ECF No. 22 at PageID.882-83). The Court, however, recognized that "an official capacity action seeking relief constitutes an exception to sovereign immunity." (ECF No. 22 at PageID.883). Accordingly, the Court concluded that "Plaintiff's official capacity claims for prospective injunctive relief under § 1983 against Defendants Washington, Pandya, McKee, and Borgerding may proceed." (ECF No. 22 at PageID.883). Accordingly, the undersigned recommends that this aspect of Defendants' motion be denied as moot.

**II.        Due Process**

While Plaintiff alleges that his continued confinement in administrative segregation violates his due process rights, Plaintiff does not specify whether he is invoking his right to substantive due process, procedural due process, or both. This failure is of no consequence, however, as Plaintiff's claims fail under either standard.

A. Substantive Due Process

In *Albright v. Oliver*, 510 U.S. 266 (1994), the Supreme Court addressed the interaction between substantive due process and those rights specifically protected by the Bill of Rights, as well as the proper constitutional foundation upon which to base a § 1983 action. In that case, Albright was charged with selling a substance that looked like an illegal drug. Following a preliminary hearing, Albright was bound over for trial; however, the court later dismissed the charges because the offense with which Albright was charged did not state an offense under Illinois law. Albright subsequently initiated a § 1983 action in which he charged Oliver, a detective involved in the case, with depriving him of his Fourteenth Amendment substantive due process rights by subjecting him to criminal prosecution without probable cause. *Id.* at 268-70.

The Court observed that substantive due process protection had "for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Id.* at 272 (citing *Planned Parenthood of Southeast Pa. v. Casey*, 505 U.S. 833, 847-849 (1992)). The Court noted the dissimilarity between Albright's claim and the substantive due process rights recognized previously, and further noted its reluctance to expand the concept of substantive due process. *Albright*, 510 U.S. at 271-72. The Court then discussed the fact that a number of the protections contained in the Bill of Rights have been made applicable to the states via the Fourteenth Amendment. The Court observed that this process has resulted in the substitution of the specific guarantees of these portions of the Bill of Rights for the more generalized language of the Fourteenth Amendment. *Id.* at 272-73. The Court, therefore, concluded that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for

analyzing these claims.'" *Id.* at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Applying this standard, the Court concluded that Albright's allegations directly implicated the Fourth Amendment, pursuant to which he must bring his claim, because substantive due process could afford him "no relief." *Albright*, 510 U.S. at 274-75.

Simply put, Plaintiff's claims regarding his placement in administrative segregation implicate the conditions of his confinement, a matter clearly protected by the Eighth Amendment. *See, e.g., Evans v. Vinson*, 427 Fed. Appx. 437, 443 (6th Cir., June 29, 2011). Accordingly, the undersigned recommends that to the extent Plaintiff's pleadings are interpreted as asserting a substantive due process claim that such be dismissed.

### B. Procedural Due Process

Pursuant to the Due Process Clause of the Fourteenth Amendment, before depriving an individual of life or a constitutionally protected liberty or property interest the state must provide the individual notice and an opportunity to be heard. *See Paterek v. Village of Armada, Michigan*, 801 F.3d 630, 649 (6th Cir. 2015). To prevail on his procedural due process claim, Plaintiff must establish: (1) the existence of a constitutionally protected liberty or property interest; (2) a deprivation of that interest; and (3) that he was not afforded adequate procedural protection. *Id.*

Because Plaintiff alleges that he is, for all practical purposes, being subjected to indefinite placement in administrative segregation, the first two elements of this test are satisfied. *See, e.g., Dorn v. Michigan Department of Corrections*, 2017 WL 2436997 at *6 (W.D. Mich., June 6, 2017) (indefinite confinement in administrative segregation implicates a constitutionally protected liberty interest). Thus, the question becomes whether Plaintiff was afforded sufficient procedural protections. In this regard, Plaintiff's allegations implicate two related actions: (1) the initial decision

to place Plaintiff in segregation, and (2) the subsequent decision(s) to not release Plaintiff from segregation.

As noted above, Plaintiff was placed in administrative segregation following his second conviction for sexual misconduct. Plaintiff acknowledges in his complaint that he was afforded a hearing on the second sexual misconduct charge. Plaintiff has presented no evidence to the contrary or which indicates or suggests that the hearing in question was unfair or otherwise deficient. Thus, Plaintiff's procedural due process rights were not violated by the initial decision to place Plaintiff in administrative segregation.

With respect to Plaintiff's continued detention in administrative segregation, the Court recognizes that Plaintiff is entitled to "some sort of periodic review" of his status. *Dorn*, 2017 WL 2436997 at *6 (citations omitted). Plaintiff, however, has presented no evidence demonstrating or suggesting that prison officials have failed to periodically review his placement in administrative segregation. In fact, Plaintiff has presented evidence demonstrating that prison officials have, in fact, periodically reviewed his placement in administrative segregation. (ECF No. 1-1 at PageID.50; ECF No. 13-2 at PageID.447-52; ECF No. 24-1 at PageID.932).

In sum, Plaintiff has been afforded the opportunity to conduct discovery in this matter, (ECF No. 40), but in response to Defendants' motion has failed to present any evidence demonstrating that there exists, as to these particular claims, any factual dispute necessitating trial. Instead, Plaintiff's response to the present motion, like his complaint and motion for summary judgment, focuses almost exclusively on Plaintiff's belief that either he is not actually infected with HIV or that he is incapable of transmitting such to others. Accordingly, the undersigned recommends that Defendants are entitled to summary judgment as to Plaintiff's procedural due process claims.

**III.**      **Americans with Disabilities Act and Rehabilitation Act**

Plaintiff also alleges that Defendants have violated his rights under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA). Title II of the ADA provides, in pertinent part, that "no qualified individual with a disability shall, because of that disability, 'be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (quoting 42 U.S.C. § 12132).

To state a claim under Title II of the ADA, Plaintiff must establish: (1) he is a qualified person with a disability; (2) defendants are subject to the ADA; and (3) he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of his disability. *See Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). Title II of the ADA applies to state prisons and inmates. *See Mingus*, 591 F.3d at 482.

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States. . .shall, solely by reason of her or his disability, ... be subjected to discrimination under any program or activity receiving Federal financial assistance. . .." 29 U.S.C. § 794(a). Claims asserted under the Rehabilitation Act are analyzed similarly to claims asserted under the ADA. *See Lee v. City of Columbus*, 636 F.3d 245, 250 (6th Cir. 2011); *McPherson v. Mich. High Sch. Athletic Ass'n,* 119 F.3d 453, 459 (6th Cir.1997) (en banc) ("[t]he analysis of claims under the [ADA] roughly parallels those brought under the Rehabilitation Act").

The ADA, however, contains a "direct threat" exception which denies protection to an individual "where such individual poses a direct threat to the health or safety of others." 42 U.S.C. §

12182(b)(3). The Rehabilitation Act contains a similar provision. 42 U.S.C. § 12113(b). In its initial screening opinion, the Court expressly recognized these exceptions. (ECF No. 22 at PageID.881). The Court nevertheless concluded, however, that dismissal of Plaintiff's ADA and RA claims, *at the initial screening stage*, was not appropriate. As the Court stated:

> There is little doubt that a prisoner who tests positive for HIV and engages in penetrative sexual behavior poses a direct threat to the health and safety of others. The United States District Court for the Eastern District of Michigan reached that conclusion when MDOC prisoners challenged the same policy and statute fifteen years ago. *See Gibbs v. Martin*, No. 01-74480, 2003 WL 21909780 (E.D. Mich. July 28, 2003); *see also Onishea v. Hopper*, 171 F.3d 1289 (11th Cir. 1999) (holding that the Alabama prison system's segregation of all HIV positive inmates was not a violation of the Rehabilitation Act because those prisoners posed a direct threat to other inmates); *Estate of Mauro ex rel. Mauro v. Borgess Med. Ctr.*, 137 F.3d 405 (6th Cir. 1998) (affirming summary judgment that HIV-positive surgical technician was a direct threat even where odds of HIV transmission during a surgery fell between 1 in 42,000 and 1 in 420,000). But Plaintiff specifically alleges that he is not a threat to the health or safety of others because he is functionally cured. Based on his allegations, he has stated a claim that he is entitled to the protections of the ADA (and the RA). Plaintiff's claim that he is functionally cured is suspect. Moreover, the materials Plaintiff has submitted in support of his complaint, and common sense, suggest that even if Plaintiff were functionally cured, there might still be a risk of transmitting the virus by sexual contact. As was the case in *Gibbs*, *Onishea*, and *Mauro*, however, that issue remains for determination on summary judgment or trial.

(ECF No. 22 at PageID.881-82).

Despite having had ample opportunity for discovery, Plaintiff has presented no evidence to support his claims that he is "functionally cured" or is incapable of spreading HIV to others. Thus, Plaintiff cannot demonstrate that he does not come within the "direct threat" exception to the ADA and RA, a conclusion underscored by the fact that Plaintiff has twice been convicted of sexual misconduct. Accordingly, the undersigned recommends that Defendants are entitled to summary judgment as to Plaintiff's ADA and RA claims.

### IV.  Plaintiff's Motion for Summary Judgment

In his motion for summary judgment, Plaintiff does not argue that he is entitled to prevail on the claims in his Fifth Amended Complaint due to the absence of any genuine factual dispute. Instead, Plaintiff requests that this case be stayed pending his release from MDOC custody and that he be appointed counsel. Plaintiff has articulated no basis to stay the present matter and, therefore, is not entitled to such relief. As for Plaintiff's request for the appointment of counsel, the Court discerns no basis for appointing counsel in this matter. Accordingly, the undersigned recommends that Plaintiff's motion for summary judgment be denied.

### CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Plaintiff's Motion for Summary Judgment</u>, (ECF No. 52), be **denied**; <u>Defendants' Motion for Summary Judgment</u>, (ECF No. 55), be **denied as moot in part and granted in part**; and this action **terminated**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Dated: January 2, 2018

/s/ Ellen S. Carmody
ELLEN S. CARMODY
U.S. Magistrate Judge